AMERICAN RADIATOR & STANDARD SANITARY CORPORATION

v.

STANDARD–AMERICAN, INC.; Consolidated-American, Inc.; Youngstown Homes, Inc.; Mansville Construction, Inc.; Robert K. Bertin; A. B. Wolf; Sam Leonard and Samuel Moskowitz.

Civ. A. No. 29633.

United States District Court
E. D. Pennsylvania.

Dec. 5, 1961.

Schnader, Harrison, Segal & Lewis, Bernard J. Smolens, Philadelphia, Pa., Nims, Martin, Halliday, Whitman & Bonynge, Wallace H. Martin, and Oliver P. Howes, Jr., New York City, Andrew K. Foulds, and John W. Pease, New York City, for plaintiff.

Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., by Nathan L. Posner, Philadelphia, Pa., for defendants.

WOOD, District Judge.

All of the following is to be considered as our findings of fact and conclusions of law. We have divided the opinion into sections in order to clarify our view of this case. In order to avoid repetition, facts mentioned in the Discussion are not set forth again in the Findings of Fact.

## I. Discussion

In May, 1952, defendant Sam Leonard and others formed a corporation and named it "Lifetime, Inc." A year or so later, defendant Sam Moskowitz became associated with Lifetime and with defendant Leonard. This association has continued to the present day. Subsequently, the defendants formed other corporations; among them were "Mansville Construction Company, Inc.", "Youngstown Homes, Inc.", "Standard-American, Inc.", and most recently "Consolidated-American, Inc." Generally speaking, all of these corporations were owned and controlled by Leonard and Moskowitz, who were later joined in business by defendants Wolf and Bertin. All of the corporations engaged in the business of selling services and products for home remodeling and improvements.

The business was and is conducted as follows: "Sales representatives" for the defendants call on prospective customers and attempt to negotiate a contract between the customer and one of the defendant corporations—usually Stand-ard-American, and recently, Consolidated-American. The contracts contain a negotiable promissory note at the bottom of the contract. After the contract and the note are signed, the services and products purchased are supplied by independent contractors, such as plumbers, who are contacted by defendants. Defendants then sell the notes to various banks.

Two phases of the defendants' business are of particular concern here; their advertising, and the representations made by their "sales representatives." The evidence presented by the plaintiff in support of this motion for a preliminary injunction clearly establishes to our satisfaction that the defendants have attempted to take advantage of the good will of the plaintiff through their advertising and through their agents' oral representations to prospective customers. A brief outline of the history of defendants' business will confirm our conclusion.

In 1959, defendants Leonard, Moskowitz, Lifetime, Inc., and Youngstown Homes, Inc., were charged by the Federal Trade Commission with violation of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., by using false, misleading, and deceptive representations in the solicitation and sale of products such as bathrooms, heating equipment, kitchens, etc. Hearings were conducted at which the defendants involved were represented by the same counsel as is representing defendants in this case. At these hearings, customers of defendants testified to the faulty installation and the poor quality of the products installed by the contractors supplied by defendants to fulfill their contracts. The testimony is full of instances of defendants' sales representatives' statements to customers indicating that defendants were associated with Youngstown Kitchens, a division of the plaintiff herein. On April 21, 1961, the Federal Trade Commission issued a cease and desist order against Leonard, Moskowitz, Lifetime, Inc., and Youngstown Homes, Inc. That order contained

the following paragraphs which we think are pertinent here:

"It is ordered that respondents * * * directly or through any corporate or other device, in connection with the offering for sale * * * of * * * bathrooms, heating equipment * * * or any other articles of merchandise in commerce * * * cease and desist from:

* * * * * *

"3. Representing, directly or indirectly, that respondents are a part of or affiliated with Youngstown Kitchens, a division of American Radiator and Standard Sanitary Corporation * * *.

"4. Representing, directly or indirectly, that respondents' salesmen are sales managers or owners of Youngstown Kitchens, a division of American Radiator and Standard Sanitary Corporation * * *"

In October, 1959, the defendants formed the corporation "Standard-American, Inc." The advertisements run in the Philadelphia Inquirer under the name of this company continued to show sketches of kitchens designated as "Youngstown Kitchens." One advertisement, picturing a hot water heater, proclaimed that Standard-American was "American-Standard Headquarters" for gas heating. A subsequent ad heralded the company as "Standard-American Headquarters" for gas heating.

Our own evaluation of these advertisements is that *the combination* of the name chosen by the defendants for their company, "Standard-American," and the offer for sale of products manufactured by the plaintiff American-Standard and bearing its trademarks, is a strong indication of the defendants' conscious efforts to encourage the public to think that Standard-American was the same company, or an affiliated company of, the plaintiff.

■ The trademark "American-Standard" is a mark which has no particular meaning of and in itself. Such trademarks and tradenames are sometimes referred to as "technical" marks, as distinguished from "suggestive" marks. An example of a suggestive trademark is "Ideal" brand foods, or "Lifesaver" candies. Since there are an *infinite variety* of technical tradenames and trademarks available for use, the defendants' selection of the name "Standard-American" can hardly be regarded as a pure coincidence.[1]

The intention of the defendants to profit from the good will of the plaintiff is further evidenced by the conversation which took place between the plaintiff's investigator and one of defendants' sales representatives, a Mr. Stamps. The latter stated that defendant Standard-American was an "old established company, 85 years in business * * * " [2] He stated that a sink pictured in one of plaintiff's brochures was an "American-Standard brand * * * Our own."[3] The affidavit of Mrs. Miriam Andrew states that she saw the Standard-American ad in the paper and called the phone number given therein. Two salesmen called on her and told her that Standard-American was "nationwide" and that it was "associated with" Youngstown Kitchens. The affidavit of Mrs. Ada McGill states that she purchased a hot-water heater from Standard-American; that the heater bore the

1 See "What the General Practitioner Should Know About Trademarks and Copyrights" by Arthur H. Seidel, published by the Joint Committee on Continuing Legal Education of the American Law Institute and the American Bar Association, at p. 96, footnote 29, where the writer states:
"The presence of an intent to deceive on the part of the infringer is most easily demonstrated when the plaintiff's mark is a technical one. Since there are an *infinite variety* of such marks it is reasonable to conclude that an infringment was deliberate. When the plaintiff's mark is suggestive, innocent adoption thereof by the defendant is a distinct possibility."

2. See affidavit of George Comfort, dated October 18, 1961, plaintiff's Exhibit P 13, at p. 17.

3. Ib. p. 11.

mark "American-Standard" on it; and that the salesman showed her American-Standard's advertisements and told her that this was "his company."

The deception of the public, practiced by defendants, has certainly irreparably harmed plaintiff. Persons who had dealt with the defendants under the apprehension that they were associated with the plaintiff represent business lost to the plaintiff at that time, and the affidavits of such persons that they would never again do business with American-Standard (due to their failure to distinguish between the two companies), represents future business irrevocably lost to plaintiff.

Defendants argue that they are no longer using the name "Standard-American," but are now doing business under the name "Consolidated-American." They urge us to find that the plaintiff has no right to the exclusive use of the word "American," pointing out other companies in the home improvement field which contain the word "American" in their names. We agree that the plaintiff does not have the exclusive right to the use of the word "American;" but we think the plaintiff does have the right to prohibit *these defendants* from using that word in any corporate name under which they might desire to do business in the home improvement line. As we pointed out above, we have found that these defendants initiated a deliberate plan to benefit from the plaintiff's good will. A cease and desist order from the Federal Trade Commission has not succeeded in stopping them from confusing the public as to the source of the goods and services offered by the defendants. Changing the name of their company from Standard-American to Consolidated-American has not worked any change in the business methods and advertising techniques of the defendants. Their advertisements run under the name Consolidated-American are the same as those run under the name Standard-American, and are just as likely—we find—to mislead the public as to the relationship between defendants'

business and plaintiff's. Under such circumstances, we think it proper to fully exercise our discretion as a court of equity to fit the remedy to the harm. For the protection of the public, as well as for the protection of the plaintiff, we conclude that the defendants should be restrained from using any combination of words which includes the terms "American" or "Standard."

## II. Findings of Fact

1. Plaintiff American Radiator & Standard Sanitary Corporation is a Delaware corporation having its principal place of business in New York City, New York.

2. Defendant Standard-American, Inc. is a Pennsylvania corporation having an established place of business at 6701 North Broad Street in Philadelphia, Pennsylvania.

3. Defendant Consolidated-American, Inc. is a Pennsylvania corporation having a principal place of business at 3931 North Broad Street, Philadelphia, Pennsylvania.

4. Defendants Youngstown Homes, Inc. and Mansville Construction, Inc. are New Jersey corporations having their principal place of business at 6701 North Broad Street in Philadelphia, Pennsylvania.

5. Defendants Sam Leonard, Samuel Moskowitz and A. James Schorza are residents of the Eastern District of Pennsylvania.

6. Defendant A. B. Wolf is an officer and director of defendant Standard-American, Inc.

7. Defendant Robert K. Bertin is a former officer and director of Standard-American, Inc. and is a resident of the Eastern District of Pennsylvania.

8. The plaintiff owns and has the exclusive right to the use of the trade-names or trademarks "American-Standard," "Standard," "Youngstown Kitchens," "Hostess," and the representation of the Goddess Diana in Medallion design. Plaintiff has used a stylized "S"

in printing the name "American-Standard" and "Standard."[4]

9. Since 1939 the plaintiff has engaged in the manufacture and sale of equipment for domestic heating, lighting, refrigerating, ventilating, and air conditioning, as well as kitchen and bathroom equipment.

10. Plaintiff has extensively advertised and sold its products under the trademarks American-Standard, Standard, Hostess, and Youngstown Kitchens. The representation of the Goddess Diana in Medallion design has appeared on plaintiff's kitchen equipment.

11. Plaintiff's trademarks Standard, Hostess, Youngstown Kitchens and Goddess Diana are registered in the United States Patent Office. Plaintiff's trademark American-Standard is registered in Pennsylvania.

12. In the six years prior to the acts of defendants complained of herein: namely, from 1953 through 1958, plaintiff has spent more than $16,000,000 in advertising and promoting its products under the trademark American-Standard alone. As a result of extensive advertising and promotion of plaintiff's products throughout the United States, the plaintiff's trademarks have become well and favorably known to the trade and to the public. Plaintiff's products have become associated in the minds of the public with top quality merchandise.

13. In about October of 1959, defendants Leonard, Moskowitz, Wolf, Schorza, Bertin, Standard-American, Inc., Youngstown Homes, Inc., and Mansville Construction, Inc., began advertising, offering for sale and selling heating equipment and supplies, plumbing equipment and supplies, kitchen equipment and supplies and other items in the home improvement field in interstate commerce and particularly in Pennsylvania.

14. In connection with the advertising of the defendants, the name Standard-American and the name Youngstown have been prominently displayed in the Philadelphia Inquirer and the name Standard-American has been printed with a stylized letter "S".

15. Although the defendants conduct their business from two offices at 3931 and 6701 North Broad Street, Philadelphia, Pennsylvania, their advertisements have falsely represented that they have offices in principal cities throughout the United States.

16. The defendants' advertisements have falsely represented that defendants were headquarters for American-Standard heating equipment.

17. The use by the individual defendants of the names Standard-American and Youngstown in conjunction with their methods of advertising has constituted a deliberate attempt to mislead the public into believing that defendants were the same as or closely affiliated with the plaintiff. These activities of defendants have confused the public as to the source of the goods and services offered for sale by the defendants.

18. The name Standard-American is deceptively similar to the plaintiff's tradename American-Standard.

19. The name Youngstown Homes, Inc. is deceptively similar to the trademark Youngstown Kitchens.

---

4. Plaintiff was the owner of the tradename and trademark "Youngstown Kitchens" and of the trademark representing the Goddess Diana in Medallion design at the commencement of this action. However, plaintiff had entered into an agreement of sale whereby title to these trademarks was conveyed to the Mullins Manufacturing Corporation (a Delaware corporation) during the pendency of this action. The Mullins Manufacturing Corporation has accordingly moved this Court to intervene as a plaintiff in this action. Defendants have opposed this motion and have requested oral argument thereon. In order to facilitate the disposition of the matters of primary importance involved in this litigation, we have rendered this interlocutory decision before resolving the dispute *re* the right of the present owner of the trademarks "Youngstown Kitchens" and "Goddess Diana" to intervene in this action. (See affidavit of David A. DeWahl of October 19, 1961, Plaintiff's Exhibit 5.)

20. On October 1, 1961, defendants began to use the name Consolidated-American in the place of Standard-American with knowledge that plaintiff objected to their use of both names.

21. The business of Consolidated-American, Inc. is the same as that of the other corporate defendants herein and the name Consolidated-American, Inc. has been advertised by the defendants in the exact same manner as they had previously employed in advertising under the name Standard-American. The advertisements for both companies list the same telephone numbers. The telephone answering service operators who now receive calls from people inquiring about the Consolidated-American advertisements state that the number reaches both Standard-American and Consolidated-American. The name Mansville, Inc. now appears in connection with Consolidated-American whereas it previously had appeared in connection with the name Standard-American.

22. The defendants' present use of the term Consolidated-American, as described above, is likely to and has caused confusion, mistake and deception of the public as to the source of the defendants' goods and services, in that these are likely to be attributed and have been attributed to the plaintiff or to a business sponsored by or connected with the plaintiff.

23. The defendants' use of the terms Youngstown, Standard-American, and Consolidated-American has caused and will continue to cause irreparable harm to the plaintiff's business reputation and good will unless defendants are enjoined from using these terms.

### III. Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter herein.

■ 2. Plaintiff is entitled to the exclusive use of the tradenames or trademarks American-Standard, Standard, Youngstown Kitchens, Hostess, and the representation of the Goddess Diana in Medallion design.

■ 3. Defendants' use of the name Youngstown Homes, Inc. for the advertising of the same type of products as plaintiff manufactures and sells in the home improvement line constitutes infringement of the plaintiff's trademark Youngstown Kitchens.

■ 4. Defendants' use of the names Standard-American and Consolidated-American for the advertising of the same type of products as plaintiff manufactures and sells in the home improvement line constitutes infringement of the plaintiff's trademarks American-Standard and Standard.

■ 5. Defendants' acts have impaired the value of the plaintiff's tradename and trademarks and have damaged the plaintiff's business reputation and good will.

6. The defendants' advertising has been calculated to deceive and has deceived the trade and the consuming public as to the origin of the goods and services offered by the defendants.

■ 7. Defendants' acts constitute unfair competition with the plaintiff.

8. Plaintiff has no adequate remedy at law.

9. The balance of convenience to the parties weighs overwhelmingly in favor of granting the preliminary injunction hereinafter ordered.

### IV. Order

And now, to wit, this 5th day of December, 1961, It Is Hereby Ordered that the defendants in the above-captioned matter are enjoined from:

1. Using the name Standard-American, Consolidated-American, or any combination thereof, or any combination of words which includes either the word "American" or "Standard," in the business of offering for sale or selling services or products in the home improvement field.

2. Representing by advertisements or by statements to customers that de-

fendants are in any way associated with plaintiff, American Radiator and Standard Sanitary Corporation.

3. Using the trademarks American-Standard, Standard, or Hostess in any advertisement offering for sale any product not plaintiff's.

4. From passing off, inducing, or enabling others to pass off, any product not plaintiff's as and for plaintiff's product.

5. From committing any other act likely to cause purchasers to believe that the goods or services offered by the defendants are plaintiff's, unless such goods are in fact plaintiff's, and from otherwise competing unfairly with plaintiff in any manner.

The plaintiff is to post a bond in the amount of $5,000.